FILED'09 FEB 25 13:32USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CONSTANCE MCCUTCHEON,                          Civil No. 07-1745-CL

      Plaintiff,                          REPORT AND RECOMMENDATION

          v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

      Defendant.


CLARKE, Magistrate Judge.

      Plaintiff Constance McCutcheon brings this action pursuant to section 205(g) of the

Social Security Act, as amended (Act), 42 U.S.C. §§ 405(g), to obtain judicial review of the

Commissioner's final decision denying plaintiff's application for supplemental security income

benefits. For the reasons explained, the decision of the Commissioner should be affirmed.

## BACKGROUND

      Plaintiff applied for SSI benefits alleging disability commencing January 6, 2003. Her

applications were denied. Plaintiff requested a hearing, which was held before an Administrative

Law Judge (ALJ) on August 7, 2006. Plaintiff, represented by counsel, appeared and testified.

After a continuance to obtain an updated psychological evaluation, a supplemental hearing was

held by the ALJ on January 17, 2007, at which plaintiff's counsel appeared and a vocational

expert testified.  On February 21, 2007, the ALJ rendered an adverse decision.  The Appeals

Council denied plaintiff's request for review, making the ALJ's decision the final decision of the

Commissioner.  Sims v. Apfel, 530 U.S. 103, 106-07 (2000) (and authorities cited).

At the time of the ALJ's decision, plaintiff was fifty-nine years old.  Plaintiff has

completed a college degree.  The ALJ found that, although plaintiff had worked outside the

home, she has no past relevant work experience.  Plaintiff alleges disability as of January 6,

2003, based upon severe congenital heart block, post traumatic stress, and attention deficit

disorder.  The relevant medical evidence is discussed below.

## STANDARDS

This Court must affirm the Commissioner's decision if it is based on the proper legal

standards and the findings are supported by substantial evidence in the record.  Hammock v.

Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It

means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co.

v. NLRB, 305 U.S. 197, 229 (1938)).  The Court considers the record as a whole, and  weighs

"both the evidence that supports and detracts from the [Commissioner's] conclusion."  Martinez

v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  Where the evidence is susceptible of more than

one rational interpretation, the Commissioner's conclusion must be upheld.  Sample v.

Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  Questions of credibility and resolution of conflicts

in the testimony are functions solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858

n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the

record and supported by substantial evidence, Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Under sentence four of 42 U.S.C. § 405(g), the Court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the present case, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 6, 2003. (Tr. 16.)

3 - REPORT AND RECOMMENDATION

In step two, the Commissioner determines whether the claimant has "a medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the ALJ found that plaintiff's congenital third degree AV node heart block, dysthymia, and a pain disorder, constitute severe impairments. (Tr. 16-18.) Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the ALJ found that plaintiff's impairments, either singly or in combination, were not severe enough to meet or medically equal any of the listed impairments. (Tr. 18-19.)

In step four, the Commissioner determines whether the claimant can still perform his "past relevant work." If the claimant is so able, then the Commissioner finds the claimant "not disabled." Otherwise, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Commissioner must first identify the claimant's residual functional capacity (RFC), which should reflect the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week. Social Security Ruling (SSR) 96-8p. The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments. Id. In

4 - REPORT AND RECOMMENDATION

this case, the ALJ found that plaintiff retains an RFC to perform medium level exertional work, but that her RFC is reduced by nonexertional limitations:

> mild limitations in her ability to understand, and remember detailed instructions, to make simple work-related decisions, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers and peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting.

(Tr. 19-24.)  The ALJ found that plaintiff had no past relevant work.  (Tr. 24.)  Accordingly, the inquiry moved to step five.

In step five, the burden is on the Commissioner to establish that the claimant is capable of performing other work that exists in the national economy.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f).  If the Commissioner fails to meet this burden, then the claimant is deemed disabled.  Here, the ALJ found that, considering plaintiff's age, education, work experience, and residual functional capacity, there were jobs which exist in significant numbers in the national economy which she could perform.  (Tr. 24-25.)  Therefore, the ALJ found that plaintiff was not under a disability.  (Tr. 14, 257.)

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed because it is not supported by substantial evidence and contains errors of law.  Plaintiff contends that the ALJ erred by (1) rejecting a lay witness's statement for an improper reason; (2) improperly rejecting her testimony; (3) improperly rejecting the opinion of Dr. Spear; and (4) finding she could perform other jobs when the hypothetical presented to the vocational expert did  not contain all of her limitations.

The court will address plaintiff's contentions in a different order than presented by the parties.

**Physician's Opinion - Dr. Spear**

Plaintiff asserts that the ALJ erred by rejecting Dr. Spear's opinions primarily based upon the format of the questionnaire he completed. Defendant contends that the ALJ properly rejected Dr. Spear's opinion.

Generally, the Commissioner gives more weight to the opinion of a treating source or examining source than to a source who has not treated or examined a claimant. 20 C.F.R. §§ 404.1527(d)(1)(2), 416.927(d)(1)(2); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). A treating physician is one who is employed to cure. Magallanes, 881 F.2d at 751. His opinion is given more weight because he has a greater opportunity to know and observe the patient. Id. Controlling weight will be given to a treating physician's opinion on the issues of the nature and severity of a claimant's impairment(s) if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.926(d)(2). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989); 20 C.F.R. §§ 404.1527(e), 416.927(e); see also Montijo v. Sec'y of HHS, 729 F.2d 599, 601 (9th Cir. 1984).

If the ALJ chooses to disregard a treating physician's or an examining physician's opinion, and that opinion is not contradicted by another doctor, he must set forth clear and

6 - REPORT AND RECOMMENDATION

convincing reasons for doing so. Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751; Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984). If a treating or examining physician's opinion is contradicted by that of another doctor, the ALJ must set forth specific and legitimate reasons, based on substantial evidence in the record, for disregarding the opinion of the treating or examining physician. Lester, 81 F.3d at 830-31; Nguyen v. Chater, 100 F.3d 1462, 1466, (9th Cir. 1996). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, then stating his interpretation, and making findings. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986); Rodriguez, 876 F.2d at 762. Further, the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. Lester, 81 F.3d at 830.

Plaintiff saw Eugene M. Spear, M.D., in June 2001 complaining of palpitations and dizzy spells. His impression was pacemaker syndrome. Plaintiff received a new pacemaker implant. (Tr. 241, 281-87.) The echocardiogram showed normal left ventricular chamber size and function; no evidence of any congenital heart abnormalities; mild aortic sclerosis with trace aortic insufficiency; and mild mitral regurgitation. (Tr. 276-78.) Dr. Spear advised Katherine B. Brown, M.D., in July 2001 that it was the best he had seen plaintiff clinically and she was "doing great." She was doing regular exercise without having any problems. (Tr. 280.)

A stress test in September 2001 showed normal heart rate and blood pressure response to exercise; slight chest discomfort at peak of stress; the EKG was "interpretable for ischemia, secondary to the 100% paced rhythm"; and abnormal stress test. (Tr. 273-75.) Dr. Spear advised Dr. Brown that, "Overall clinically I think she is just very anxious about her condition." He thought that continued exercise in the long term would help her more than anything. (Tr. 279.)

7 - REPORT AND RECOMMENDATION

Plaintiff saw Dr. Spear for follow-up until April 2004. During this period, although plaintiff complained at times of shortness of breath, heart palpitations, and intermittent chest pain and dizziness, Dr. Spear found normal pacemaker function. He found that the heart pounding did not seem clinically significant. (Tr. 270, 271, 288-89.) When plaintiff was admitted to the medical center in February 2002 for chest pain and dizziness, Dr. Spear found that her pacemaker was functioning fine. He was not sure the dizziness was related to the pacemaker. (Tr. 227-30.) A Holter monitor study showed she was slightly dizzy and short of breath with appropriate increased heart rate response when she exerted herself. There was no evidence of any pacemaker malfunction or of any significant bradyarrhythmias. (Tr. 272.) In April 2004, plaintiff reported that she had been "feeling terrific." Dr. Spear assessed:

> Third-degree AV block with occasional palpitations and shortness of breath. The patient clinically seems to be doing OK. We are not going to change anything on her pacer program. She really is not having any significant arrhythmias that we can see. We will plan to see her back in six months unless her clinical situation worsens.

(Tr. 270.)

Two years later, Dr. Spear stated in a June 2006 note that plaintiff had a heart condition that easily fatigued her. He recommended limiting work hours to twelve hours per week. (Tr. 315.) In August 2006, Dr. Spear completed a Cardiac Residual Functional Capacity Questionnaire prepared by plaintiff's counsel. Dr. Spear's diagnosis was complete heart block, pacemaker dependent, NYHA-II. He identified the clinical findings, laboratory, and test results as: "Interogate [sic] pacemaker every 6 months. Has no underlying heart rhythm & when we slow the pacer rhythm down she is quite symptomatic." (Tr. 317.) Dr. Spear identified plaintiff's symptoms as: fatigue, edema, weakness, palpitations, dizziness, and shortness of

8 - REPORT AND RECOMMENDATION

breath; he stated plaintiff fatigued with exertion very easily "& have tried to reprogram her pacer

several times to adjust to this [with] little help." (Tr. 317.) He indicated that plaintiff had

"marked limitation of physical activity," (Tr. 317), stress accentuated her fatigue, and plaintiff

was incapable of even low stress jobs. As to plaintiff's prognosis, Dr. Spear stated that she "has

been the same for the last 5 ½ years I have known her." (Tr. 319.) He indicated that it was

reasonable she would experience substantial difficulty with stamina, pain, or fatigue if she

worked full time at light or sedentary levels; it was reasonable to expect she would need to work

at a reduced pace if employed full time, and it was likely that one or more of plaintiff's health

problems would be made worse if she worked full time at light or sedentary levels of exertion.

Dr. Spear indicated plaintiff could sit and stand/walk less than 2 hours and would need to shift

position at will; she would need unscheduled breaks of 15-20 minutes every 30 minutes; and she

could rarely lift any weight up to 20 pounds and never lift 50 pounds; she gets "very dizzy" with

bending, stooping, or crouching. Plaintiff would have bad days about four times a month. When

asked the approximate date from which plaintiff has continuously been unable to work, Dr. Spear

wrote: "Congenital heart defect," (Tr. 322). (Tr. 316-22.)

　　　　In his decision, the ALJ notes that the fill-in-the-blanks form completed by Dr. Spear is

brief and conclusory and does not contain a description of medical findings. He rejected Dr.

Spear's 2006 opinions for this reason. A physician's opinion that is conclusory , brief, and

unsupported by clinical findings need not be accepted by an ALJ. See Tonapetyan v. Halter, 242

F.3d 1144, 1149 (9th Cir. 2001); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); see also

Smolen, 80 F.3d at 1288. The Court does not agree, however, that this reason is the primary

reason the ALJ discounted Dr. Spear's opinions. The ALJ, noting that Dr. Spear's opinions

9 - REPORT AND RECOMMENDATION

deserved serious consideration, also found that his opinions were not well supported by

medically acceptable clinical and/or laboratory diagnostic studies and were inconsistent with

other evidence in the record. The ALJ found that the 2006 opinions were totally at odds with Dr.

Spear's clinical notes, which indicated that plaintiff's pacemaker was functioning normally. He

pointed out that there was nothing in the record reflecting a significant deterioration in the two

years since plaintiff's last visit to Dr. Spear in 2004.[1]  As set out, supra, there is no evidence

which correlates plaintiff's complaints with any medical problem. The ALJ's findings are

supported by substantial evidence in the record and are clear and convincing reasons for

discounting Dr. Spear's 2006 opinions. See Nguyen v. Chater, 100 F.3d 1462, 1464-65 (9th Cir.

1996); Bayliss, 427 F.3d at 1216; Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)

(rejection of questionnaire responses which were inconsistent with medical records).

        Plaintiff also argues that, if the ALJ needed additional information from Dr. Spear, he had

a duty to develop the record. In the Ninth Circuit, the ALJ has an "independent '"duty to fully

and fairly develop the record and to assure that the claimant's interests are considered."'"

Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288). The duty to further develop

the record is triggered "only when there is ambiguous evidence or when the record is inadequate

to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th

Cir. 2001) (citing Tonapetyan, 242 F.3d at 1150); Thomas v. Barnhart, 278 F.3d 947, 958 (9th

Cir. 2002) (requirement for additional information "is triggered only when the evidence from the

treating medical source is inadequate to make a determination as to the claimant's disability.").

---

        [1]   Plaintiff testified at the hearing that she believed she was without medical insurance coverage
so she had not seen Dr. Spear for a year and a half until June 2006.  (Tr. 359-60, 367-68.)

Such a duty exists even where the claimant is represented by counsel. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). The record here is neither ambiguous nor inadequate to allow the ALJ to evaluate the evidence properly. The ALJ did not err in not further developing the record by contacting Dr. Spear.

**Plaintiff's Testimony**

Plaintiff contends that the ALJ erred in rejecting her testimony without articulating clear and convincing reasons. The Commissioner responds that the ALJ properly determined that plaintiff's testimony was not entirely credible.

In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis. Smolen, 80 F.3d at 1281; SSR 96-7p. The first stage is the Cotton test, Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. All that is required of the claimant is that he produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged.

Under the second part of the analysis, the Commissioner must analyze the credibility of a claimant's testimony regarding the severity of claimant's symptoms, evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. See SSR 96-7p. Unless affirmative evidence of malingering is suggested in the record, the ALJ can reject a claimant's symptom testimony regarding the severity of symptoms "only if he makes specific findings stating clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; Dodrill, 12 F.3d at 918; Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (and cases cited).

11 - REPORT AND RECOMMENDATION

General findings are insufficient; rather, the ALJ must identify what testimony is not credible, and what evidence suggests that the testimony is not credible. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The Commissioner cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings. Cotton, 799 F.2d 1403.

> In determining a claimant's credibility the Commissioner may consider, for example:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . . In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . . Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284; SSR 96-7p; 20 C.F.R. §§ 404.1529(c); 416.929(c).

Here, the ALJ noted the evidence in the record suggesting that plaintiff is malingering. Plaintiff underwent a psychodiagnostic evaluation and MMPI Report by Steven L. Bolgrin, Ph.D., on September 27, 2006. In the Test Taking Behavior portion of his report, Dr. Bolgrin remarked that, in answering the MMPI, plaintiff had gone back to review some items and had redone some items. Dr. Bolgrin concluded that,

> Although there may be a number of logical explanations for [plaintiff's] approach in testing on the MMPI it was my opinion that the most parsimonious rationale was that she was attempting to exaggerate her symptoms of Attention Deficit Disorder in her response style to this test and bring this set to the observation of the evaluator.

(Tr. 329; see 266.) In his conclusion, Dr. Bolgrin stated, after referring to plaintiff's heart problems, that, "there appeared to be evidence both in the case file reviewed and on observation

during evaluation that [plaintiff] is exaggerating about both her physical and emotional

symptoms." He gave a provisional diagnosis of hypochondriasis. (Tr. 332-33.) Citing Dr.

Bolgrin's report, the ALJ found that, "the record includes evidence strongly suggesting the

claimant has exaggerated symptoms and limitations, engaged in possible malingering or

misrepresentation and/or consciously attempted to portray limitations tha[t] are not actually

present." (Tr. 21.) He found that this evidence suggested that information provided by plaintiff

was not entirely reliable. Because there is medical evidence of malingering in the record, the

clear and convincing standard for discounting plaintiff's testimony is not applicable.[2] Carmickle,

533 F.3d at 1160 (citing Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006); Morgan v.

Comm'r of Soc. Security Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Pfeiffer v. Apfel, No. CIV.

99-1526-HA, 2001 WL 204831, at *4 (D. Or. Jan. 29, 2001), aff'd, 47 Fed. Appx. 831 (9th Cir.

2002); see Smolen, 80 F.3d at 1283-84.

The ALJ found that plaintiff's allegations as to the existence of her symptoms and the

intensity, persistence, and limiting effects of these symptoms were disproportionate and were not

well  supported by the objective medical findings or other corroborating evidence. The ALJ

found, in part, that plaintiff's description of her "fairly limited" daily activities (Tr. 20) did not

support a finding of disability for several reasons. The ALJ first found that, "allegedly limited

_____

        [2]    Plaintiff contends that, because the ALJ cited a single allegation of possible malingering by
a consultative psychologist and her treating cardiologist, Dr. Spear, had stated plaintiff is not
malingering, this inconsistency is not a clear and convincing reason to reject her testimony. However,
as stated, this is not the applicable standard. Moreover, the ALJ need not make a specific finding that
a claimant is malingering; all that is necessary is that there is affirmative evidence suggesting
malingering in the record. Carmickle, 533 F.3d at 1160 n.1; see Greger v. Barnhart, 464 F.3d 968, 972
(9th Cir. 2006); Morgan, 169 F.3d at 599; Smolen, 80 F.3d at 1283-84; Pfeiffer v. Apfel, No. CIV.
99-1526-HA, 2001 WL 204831, at *4 (D. Or. Jan. 29, 2001), aff'd, 47 Fed. Appx. 831 (9th Cir. 2002).

daily activities cannot be objectively verified with any reasonable degree of certainty." (Tr. 20.) The Court agrees with plaintiff that this reason given by the ALJ for discounting plaintiff's allegations of limited daily activities is not a sufficient reason.

The ALJ also found that, "Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. " (Tr. 20.) The ALJ found in his decision that the medical evidence did not support a finding of disability, which this court finds is supported in the record. There was also evidence that plaintiff exaggerated her symptoms, which the ALJ discussed. This reason to discount plaintiff's testimony is a sufficient reason which is supported by substantial evidence.

The ALJ also found that, "Finally, the record reflects the claimant has engaged in daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 20.) In February 2004, Gregory A. Cole, Ph.D., indicated in a Psychological Evaluation report that plaintiff showered daily; she washed the dishes, vacuumed once a month, and swept and mopped every six months; she did the laundry two times a week; she shopped and cooked daily; and she drove a car. She watched videos, did bead work, made quilts, played her concertina; and she saw her friends and went to church and Bible study once a week. (Tr. 267.) In September 2006, Dr. Bolgrin's report, see supra, indicated that plaintiff engaged in these daily activities, although he indicated that plaintiff sometimes asked family or friends for help and her son did household chores she was not able to do. (Tr. 328.) After her alleged onset date, plaintiff worked on a part-time basis for a short time as a receptionist in late

2005, and then for the food pantry until about July 2006. (Tr. 173, 189-90, 361-63.) The ALJ recounted this record evidence to conclude that plaintiff's daily activities at least at times are somewhat greater than she alleges. Although the evidence of plaintiff's activities may be interpreted in a way more favorable to her, the ALJ's interpretation here is reasonable and supported by the record. See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Thomas, 278 F.3d at 959.

In any event, the ALJ discounted plaintiff's credibility for other reasons in addition to the reason that her daily activities are greater than alleged, which plaintiff does not raise. The ALJ found that, while plaintiff has received treatment for her symptoms, the treatment has been essentially routine and/or conservative and has generally been successful in controlling these symptoms. As set out supra, with the exception of an emergency room visit in August 2001 for nonspecific chest pain following implant of a new pacemaker by Dr. Spear (Tr. 227-30), plaintiff saw Dr. Spear for her heart condition for regular followup visits every six months or so. On these occasions, plaintiff's pacemaker was functioning properly. The record reflects that plaintiff did not see Dr. Spear or visit any other doctor, clinic, or emergency room concerning her heart condition during the period April 2004 to June 2006. In 2001 through early 2002, plaintiff was seeing three counselors (Tr. 211-18, 236, 243); she was in individual psychotherapy with Jerilee Merkle, ACSW, LCSW, seeing her in hour-long sessions for thirteen hours in 2000, twenty-five hours in 2001, fourteen hours in 2002, ten hours in 2003, and eight hours in 2004 (Tr. 290-91). She was prescribed antidepressants in 2001. (Tr. 236-43.) A mid-2001 progress note by Dr. Brown indicated that plaintiff declined antidepressants for depression "at this time" (Tr. 241), and a January 2002 progress note by Dr. Brown stated that antidepressant was recommended but

15 - REPORT AND RECOMMENDATION

declined (Tr. 236). The record supports the ALJ's finding in this regard, and the Ninth Circuit

has determined that evidence of conservative treatment is sufficient to discount a claimant's

testimony of the severity of an impairment. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir.

2007), cert. denied, ___ U.S. ___, 128 S. Ct. 1068 (2008).

      The ALJ also found that plaintiff did not specify any particular complaint in numerous

office visits, which the ALJ found contrasted with plaintiff's claim of ongoing, disabling

symptoms. Plaintiff claims she is unable to work due to fatigue and dizziness and claims an

alleged onset date of January 2003. (Tr. 363.) The record indicates that she complained to Dr.

Brown in May 2001 of "severe fatigue" for the past several weeks to two months; there was no

associated dizziness or shortness of breath. Dr. Brown noted plaintiff's history of testing positive

for lupus and plaintiff's labs were to be checked. (Tr. 242.) Continued fatigue was noted by Dr.

Brown on June 19, 2001, and Dr. Brown questioned whether it was depression related. (Tr. 241.)

Following the implant of the new pacemaker by Dr. Spear on June 27, 2001, supra, Dr. Brown

noted in a September 2001 progress note that the etiology of plaintiff's fatigue and dizziness "is

somewhat elusive here." Plaintiff was to let her know if symptoms worsened with an increased

dose of Zoloft she had recently started. (Tr. 239.) With the exception of the September 2001

note of Dr. Brown's and a complaint of intermittent dizziness to Dr. Spear in February 2002 (Tr.

228), see supra, the record does not include clinic or office visit notes indicating that plaintiff

complained of either of these symptoms to her treating providers following implant of the

updated pacemaker. The Ninth Circuit in Greger, 464 F.3d at 972, found that a failure by

claimant to report symptoms during the relevant period was a clear and convincing reason to

reject claimant's testimony.

16 - REPORT AND RECOMMENDATION

In addition, the ALJ found that plaintiff often failed to comply with medical regimen prescribed by her treating doctors, which the ALJ found suggested that plaintiff's symptoms may not be as serious as she alleges. Defendant does not address this reason given by the ALJ, and it is not clear to the Court from a review of the record that this reason is supported.

Even though not every reason relied on by the ALJ to discount a claimant's credibility is upheld on review, the credibility determination will be sustained if the determination is supported by substantial evidence. Batson, 359 F.3d at 1197; Tonapetyan, 242 F.3d at 1148. Here, the clear and convincing standard does not apply. The Court finds that the ALJ provided sufficient reasons to discount plaintiff's allegations and substantial evidence supports his determination. See Pfeiffer, 2001 WL 204831, at *4.

**Lay witness testimony**

Plaintiff contends that the ALJ erred by finding that lay witness Lisa Harrington's statement was "generally credible," but then rejecting some of her observations because she lacked "medical and/or vocational expertise." The Commissioner does not address this specific contention of plaintiff.

An ALJ must consider the testimony of friends and family members. Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). To disregard such testimony violates 20 C.F.R. §§ 404.1513(e)(2), 416.913(e)(2), which mandates consideration of observations by non-medical sources regarding how an impairment affects a claimant's ability to work. The Ninth Circuit has recently addressed what an ALJ must do with lay witness testimony:

> In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e),

416.913(d)(4) & (e).  Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence . . . and therefore *cannot* be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted).  Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919; see also Lewis v. Apfel, 236 F.3d 503, 511 [9[th] Cir. 2001] ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (citations omitted)).

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen, 80 F.3d at 1288.

On July 10, 2006, Lisa Harrington completed a questionnaire sent to St. Vincent De Paul by plaintiff's counsel.  She indicated that plaintiff's job title was food pantry service worker and that plaintiff had worked from November 30, 2005 to the present.  Ms. Harrington indicated the following in response to questions:  plaintiff could ordinarily stand and/or walk at her job for 4-8 hours; she was required to lift on a daily basis 25-50 pounds; plaintiff did not demonstrate work avoidance behavior; she could not sustain a full day's work without extra periods of rest throughout a regular work week; her rate or production decreased in the period prior to the date last worked; her pace or productivity was less than 80% of a normally productive employee; and plaintiff was not terminated nor did she quit because of difficulties related to her illness/injury.  Ms. Harrington responded "Yes" to questions that plaintiff's job performance was adversely affected by:  concentration, inability to tolerate job stress, judgment problems, emotional stability, pain, fatigue/stamina, inconsistency of performance, slowness, and difficulty with cooperating or getting along with coworkers, public or supervisors; and "No" to:  attention span

18 - REPORT AND RECOMMENDATION

difficulties, memory difficulties, reliability, excessive absences from work, and side effects from medication. (Tr. 189-90.)

In his decision, the ALJ recited pertinent notations by Ms. Harrington, concluding with the statement: "Finally, she checked blocks consistent with the claimant's complaints of fatigue, pain, slowness and inability to concentrate or tolerate job stress." (Tr. 21.) The ALJ went on to make findings:

> There is no reason to doubt Ms. Harrington's observations of the behaviors the claimant demonstrates, and I find her to be generally credible. However, as she does not have medical and/or vocational expertise, her opinions are of limited value in establishing the claimant's residual functional capacity, or determining how the claimant's impairments affect her overall ability to perform basic work activities. Therefore, I cannot afford Ms. Harrington's statement significant weight as additive evidence to support a finding of disability.

(Tr. 21.)

It is the nature of lay testimony that the witness is a non-medical source who will not have medical or vocational experience. While medical diagnoses are beyond the competence of lay witnesses, Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996), nowhere in Ms. Harrington's responses does she proffer any medical diagnosis. Lay observations of a claimant seeking benefits are competent evidence as to how an impairment or impairments might affect a claimant's ability to work, see 20 C.F.R. § 416.913; SSR 06-03p, and here, Ms. Harrington is someone who worked with plaintiff as her supervisor. The Court finds that the reasons given by the ALJ to discount Ms. Harrington's lay testimony are not legitimate reasons germane to her.

However, although the ALJ gave less weight to Ms. Harrington's testimony for an improper reason, the court finds such error harmless in the circumstances of this case. See Stout, 454 F.3d at 1054 (recognizing application of harmless error in social security cases).

19 - REPORT AND RECOMMENDATION

There is nothing in the ALJ's opinion to show that he completely rejected Ms. Harrington's statements. It appears the ALJ considered Ms. Harrington's statements along with all the other evidence which he found to be credible. As explained in other parts of this report, the ALJ found there is no medical evidence in the record which explains plaintiff's complaints of fatigue and dizziness. The court has found that Dr. Spear's opinions made in 2006 were rejected by the ALJ for clear and convincing reasons based on substantial evidence in the record. There is evidence of exaggeration and malingering by plaintiff in the record and the court has found that the ALJ discounted plaintiff's testimony based on sufficient reasons supported by the record. Therefore, on this record, any error by the ALJ in giving Ms. Harrington's statements less weight for the stated reason is harmless.

**Step five determination**

Plaintiff contends that the ALJ erred by finding that she can perform jobs identified by the vocational expert when the hypothetical posed to the vocational expert contained a defective RFC and failed to contain all of her limitations. Defendant responds that the ALJ properly relied on vocational expert testimony.

An ALJ may rely on the testimony of a vocational expert that is elicited with a hypothetical question that sets forth all the limitations of the claimant. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). The assumptions in the hypothetical question must be supported by substantial evidence. Id. The ALJ may not incorporate limitations or restrictions that are not supported by the record. SSR 96-8p. A hypothetical which fails to include all of a claimant's limitations does not constitute substantial evidence to support a finding that the claimant can

perform jobs in the national economy.  Magallanes, 881 F.2d at 756; Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988); Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001).

At the supplemental hearing, the ALJ posed a hypothetical in which a claimant of plaintiff's age, education, and prior work experience was capable of medium level exertion but had non-exertional limitations such as those found in the Medical Source Statement completed by Dr. Bolgrin at Exhibit 14F (Tr. 335-37).  In the referenced "Medical Source Statement of Ability to do Work-Related Activities (Mental)," Dr. Bolgrin indicated that plaintiff had "Slight" restriction in the following areas:  "Understand and remember detailed instructions"; "The ability to make judgements on simple work-related decisions"; "Interact appropriately with the public"; "Interact appropriately with supervisors"; "Interact appropriately with co-workers"; and "Respond appropriately to work pressures in a usual work setting."  (Tr. 335-36.)  These limitations were subsequently adopted by the ALJ in his decision, see supra, and the ALJ determined plaintiff could perform the jobs identified by the vocational expert in response to the hypothetical.  (Tr. 19, 24-25.)

Plaintiff first contends that the ALJ improperly dismissed limitations identified by her, her former supervisor, and Dr. Spear.  The Court has determined that the ALJ properly discounted plaintiff's testimony and the opinion of Dr. Spear, and that any error by the ALJ in discounting Ms. Harrington's statement for the reasons he did was harmless error.

Plaintiff also contends that the ALJ improperly rejected Dr. Cole's opinion because he conducted a mental exam at her attorney's request.  Defendant does not address plaintiff's contention.  Dr. Cole conducted a psychological evaluation of plaintiff in February 2004.  Plaintiff told Dr. Cole that she couldn't work "at all" because she gets fatigued easily and she had

21 - REPORT AND RECOMMENDATION

lack of clarity of thinking; she thinks "this" is related to her heart problem. (Tr. 264.) On mental

status examination, Dr. Cole found generally that plaintiff had average or above average ability

on the tasks attempted. He found that, throughout the assessment, plaintiff exhibited a tendency

to give up easily on tasks and her overall pace was slow, although there was no evidence of poor

effort or inconsistency in plaintiff's responses to the various tasks. Testing indicated a moderate

level of self-reported depression symptomatology. Although plaintiff displayed "extreme

defensiveness" in her responses to the MMPI-II, she responded to items reflecting some unusual

symptoms or beliefs. Dr. Cole found that plaintiff responded to items at the end of the MMPI-II

booklet "in an extreme and exaggerated manner." (Tr. 266.) Dr. Cole found that individuals

with this profile tended to show a pattern of chronic psychological maladjustment. In part, he

found that plaintiff is reporting physical concerns that may have no organic basis; she reported

extreme somatic symptoms and tended to feel psychologically frail and vulnerable to negative

self-perceptions. Plaintiff's responses suggested that she is experiencing low morale and a

depressed mood. She viewed her physical health as failing. Dr. Cole found that, in any

intervention or psychological evaluation program involving occupational adjustment, plaintiff's

negative work attitudes could become an important problem to overcome; she had a number of

attitudes and feelings that could interfere with work adjustment. Dr. Cole's diagnosed Axis I

dysthymic disorder and anxiety disorder NOS; Axis II rule out personality disorder NOS (with

schizoid and schizotypal features); Axis IV stress associated with occupational and economic

problems; and Axis V 59.[3] Dr. Cole recommended followup psychological services and

behavioral medication management. He stated that plaintiff exhibited mild problems in the areas

of attention and concentration; she had above average immediate and delayed memory

capabilities; and if plaintiff pursued vocational placement, he presumed that her claimed

problems with fatigue would be the primary factors which would affect her overall vocational

success. Dr. Cole concluded with the statement: "It can also be noted that results of the current

evaluation are not totally consistent with the client's own views of her status, as she states that, 'I

can't work at all,'" (Tr. 268). (Tr. 263-68.)

The ALJ set out Dr. Cole's findings of a GAF of 59 denoting moderate impairment in

social or occupational functioning; his opinion that plaintiff's principal problem was fatigue; and

Dr. Cole's conclusion that her assertion that she could not work at all was not supported. The

ALJ noted that plaintiff underwent the examination through attorney referral for which he was

presumably paid. He stated that, although Dr. Cole's opinion "is certainly legitimate and

deserves due consideration, the context in which it was produced cannot be entirely ignored."

(Tr. 22.) He then found that, "Even so, Dr. Cole's opinion differs sharply with the claimant's

allegations of ongoing, disabling psychological symptoms since the alleged onset date." (Tr. 22.)

It appears that the ALJ accepted Dr. Cole's opinions to the extent that the opinions did not agree

with plaintiff's allegations of disabling symptoms. However, he discounted the opinion for the

reason that the opinion was solicited by plaintiff's attorney. Although the Ninth Circuit has

---

[3]    A GAF of 51 - 60 means "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994).

23 - REPORT AND RECOMMENDATION

stated that, "The purpose for which medical reports are obtained does not provide a legitimate

basis for rejecting them," Lester, 81 F.3d at 830, the court limited that holding to the particular

circumstances there in Saelee v. Chater, 94 F.3d 520, 522-23 (9th Cir. 1996) (per curiam), finding

that a doctor's credibility may be questioned where the opinion letter has been solicited by

counsel.  See Burkhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1988).  In Nguyen v. Chater, 100

F.3d 1462, 1464-65 (9th Cir. 1996), the Ninth Circuit court found that the source of a referral is

relevant where there is no objective medical basis for the opinion, citing Burkhart.  Here, Dr.

Cole found that plaintiff's fatigue was the primary factor affecting overall vocational success, yet

he relied on her reports, rather than on any objective basis.  Under Ninth Circuit law, the ALJ's

reason for discounting Dr. Cole's opinion was not improper.

Plaintiff contends that the ALJ improperly rejected the opinions of a treating counselor,

Mr. MacKendrick, for the reasons that Mr. MacKendrick assumed the role of an advocate and

because his opinions were clearly at odds with other substantial evidence.  Defendant responds

that the ALJ properly rejected the opinion.  Gary W. MacKendrick, M. Div., M.C.P.C.,

completed a Mental Status Report on April 1, 2003.  Mr. MacKendrick indicated that he had first

examined plaintiff in May 1999 and had seen her weekly/monthly.  He stated in "General

Observations" that plaintiff's cardiac issues are unpredictable and "have prohibited her from

being employed." (Tr. 259.)  In "Symptomatology," he states:  "Unable to work, daily schedules

impacted by cardiac instability, mental health PTSD: flooding, inability to concentrate, not able

to complete tasks, extreme anxiety attacks, phobias, feels overwhelmed, low energy level,

unhappy, irritable, mood swings . . . thought processes are disorganized, obsesses and has trouble

making decisions." (Tr. 259.)  When asked to list the most recent objective findings, Mr.

24 - REPORT AND RECOMMENDATION

MacKendrick stated that plaintiff cannot concentrate on tasks at hand and complete them
quickly. In describing change in condition since first treated, he stated in part that, "[Plaintiff]
has made attempts to wor[k] but either medical or mental health issues have prevented this from
happening. We do not see how it is possible for her to work in her condition." (Tr. 260.) In
"Diagnostic Impressions," he states that plaintiff has had four pacemakers implanted and has had
numerous hospitalizations and surgeries for that; she suffers from PTSD, domestic violence, and
homelessness; and she minimally manages daily life events. In describing plaintiff's
concentration, persistence, and pace, Mr. MacKendrick states that plaintiff is not able to
comprehend/problem solve at an immediate level and that "it takes her weeks to complete things
like applications"; and "She has gone, in the past, to job interviews and volunteer work, but
simply cannot deal with the pace. She is unable to work." (Tr. 261.) In "Other Comments," he
states that plaintiff "will make every effort to comply with requests, but is overwhelmed and
unable to survive without financial, structural and supportive interventions" (Tr. 261). (Tr. 259-
62.)

As an "other source," 20 C.F.R. § 416.913(d); SSR 06-03p, Mr. MacKendrick's opinion
may be discounted based on reasons germane to him, Dodrill, 12 F.3d at 919; Purvis v. Comm'r
of Soc. Sec. Admin., 57 F. Supp.2d 1088, 1092 (D. Or. 1999). Considering the tone of the
report, the Court cannot say that the ALJ's reasoning that Mr. MacKendrick had assumed the role
of plaintiff's advocate is an unreasonable interpretation. The ALJ also found that Mr.
MacKendrick's evaluation of plaintiff's mental functioning was at odds with other substantial
evidence. Defendant relies on Mr. MacKendrick's statement that plaintiff is "unable to survive"
without financial, structural, and supportive intervention, and points out that the evidence shows

that plaintiff's mental impairments required only conservative/routine treatment and she was able

to independently maintain a household, complete activities of daily living, and work part-time.

Plaintiff relies on Dr. Cole's opinion that plaintiff's primary problem was fatigue with physical

problems exacerbated by psychological issues and Dr. Spear's opinion that she was limited by

fatigue exacerbated by stress.  The Court has found that Dr. Cole's and Dr. Spear's opinions were

properly discounted.

Plaintiff contends that the ALJ failed to include a discussion of her ability to perform

sustained work activities for eight hours a day, five days a week, as required by SSR 96-8p.  SSR

96-8p provides in pertinent part that,

> Ordinarily, RFC is the individual's maximum remaining ability to do sustained
> work activities in an ordinary work setting on a regular and continuing basis, and
> the RFC assessment must include a discussion of the individual's abilities on that
> basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or
> an equivalent work schedule.

See 20 C.F.R. §§ 404.1529; 404.1545; 416.929; 416.945.  The ALJ recited the applicable law

that RFC is the ability to do physical and mental work activities on a sustained basis despite

limitations from impairments, see supra.  (Tr. 15.)  There is nothing in the ALJ's decision to

indicate that he did not determine plaintiff's RFC on this basis, and there does not appear to be

any published opinions in the Ninth Circuit requiring that the ALJ discuss and make particular

findings in this regard.  See Perez v. Barnhart, 415 F.3d 457, 465 (5th Cir. 2005); see Frank v.

Barnhart, 326 F.3d 618, 621 (5th Cir. 2003).  No error of law occurred.

Plaintiff contends that the ALJ failed to address the diagnosed pain disorder and, more

specifically, that there is no evidence that she was limited to medium work due to her pain

disorder as opposed to shortness of breath and chest pain upon exertion.  The ALJ, relying upon

26 - REPORT AND RECOMMENDATION

the diagnosis by Dr. Bolgrin, found that plaintiff's pain disorder with both psychological and general medical condition was a severe impairment, supra.  In determining plaintiff's mental RFC, the ALJ adopted Dr. Bolgrin's limitations, supra.  Surely, the limitations set out by Dr. Bolgrin and adopted by the ALJ included limitations resulting from plaintiff's pain disorder, which was diagnosed by Dr. Bolgrin.  On this record, the Court finds that plaintiff's pain disorder was addressed by the ALJ and any resulting limitations were included in the hypothetical posed to the vocational expert.

The court has found that, other than discounting Ms. Harrington's statements for an improper reasons which the court has found to be harmless, the ALJ did not err in any of the ways contended by plaintiff.  The limitations properly credited by the ALJ were included in his RFC and in the hypothetical posed to the vocational expert.   Accordingly, on this record, the ALJ's step five finding is supported by substantial evidence.

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be affirmed and that judgment be entered accordingly.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.  *Objections to this Report and Recommendation, if any, are due by March 16, 2009.  If objections are filed, any responses to the objections are due within 10 days, see* Federal Rules of Civil Procedure 72 and 6.  Failure to timely file objections to any factual determinations of the

27 - REPORT AND RECOMMENDATION

Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this _25_ day of February, 2009.

MARK D. CLARKE
United States Magistrate Judge

28 - REPORT AND RECOMMENDATION